All right, our next case is 5090461 in the interest of H.S.H., Mr. Garavaglia here for the appellant, Ms. Shanahan for the appellant. Mr. Garavaglia. Mr. Garavaglia. Thank you, Your Honor. Please record, Mr. Garavaglia, on behalf of the father. Counsel, could you speak up because we are recording. That helps. Okay. That's good. Perfect. That's great. Thank you. Basically, the facts in this case are not generally in dispute. The record pretty well outlines the process of this proceeding. There was a petition filed for adjudication of work shift on a minor child. There was a shelter care hearing. The child was taken to the shelter care. That was in October of 05. In May of 06, there was an adjudicatory order entered showing neglect, abuse, environmental injuries to the welfare of the child. There were permanency hearings for help during six-month intervals thereafter. And in January of 09, a fitness hearing was completed and an order was entered finding the father to be on fifth on three grounds. The first ground was that the father was depraved and that the father had been convicted of at least three felony offenses, one or more being in the last five years. That's a statutory ground. Another was failure to make reasonable progress towards the return of the child during any nine-month period after the end of the initial nine-month period following the adjudicatory hearing. That was also a statutory ground. The third was a statutory ground, failure to make reasonable efforts to correct the conditions that were the basis for the removal of the child. At the best interest hearing, which was in late July of the order entered in August of 09, the judge found that the order should terminate the parental rights and the child should be placed for adoption. Now, as far as argument, I'd like to address the depravity issue. The trial court took judicial notice of three O.P. violations, I'm sorry, two O.P. violations in the Franklin County Court along with an aggravated battery. The battery was in August of 03. The unlawful violation of O.P. was in October of 07. There was one after that and there was a certified copy of a Williamson County case concerning criminal trespass to arrest the class four felony. There was another case, another unlawful violation of O.P. That conviction was on September 15th of 08. That would be outside of the filing of this initial petition and submitted petition to terminate rights. Whenever we look at depravity, that's been defined in the Stadler v. Stone case as an inherent deficiency of moral sense and record duty. Now, this presumption of depravity is rebuttable, but it has to be rebutted by the father. And if there's no proof of his rebuttal, then it stands. That's basically under the law and under the case law. We feel the father did rebut the presumption of depravity. One of these O.P. violations was deemed within the presence of a protected person within 500 feet of a motel. Another was within 500 feet of a protected person from his sister's house. Another violation was at the county jail, public place. Testimony presented, along with some evidence that the father attended programs at the Graham Correctional Center whenever he was incarcerated, did criminal addiction classes, did victim empathy programs, impacted crimes on society. He also completed anger management and parenting classes. Did he complete all these? Yes, he did. Okay. In fact, he completed some of these after the termination hearing, or after the unfitness hearing, but before the termination hearing. Just as an outline here, the unfitness hearing concluded in January of 2009. He was released from incarceration in June of 2009, and the death interest hearing was in July of 2009. I'd like to point out that none of these O.P. violations involved any physical violence or any violent crimes or any threats of violence. He pleaded guilty to these charges of violating O.P. There were no trials of the matter. Throughout the whole record of this thing, the father has always been a good parent. There's never been any parenting issues about him whenever he's with the child. Even the case workers testified to that. If you look at the cases on depravity, or even think in terms of depravity, depravity is something really, really bad. It's like murder. It's like sex offense. It's like repeated drug sales, or drug use, or conviction after conviction, or just moral perpetuity. The cases you look at, it's sexual abuse to the child, sexual abuse to the children in the family, attempted murder, or even murder of the spouse, the mother of the child. Those things are depraved. That's not what the statute says, though, right? That's right. We all got to follow the statute. We all got to follow the statute. We may not like it or disagree on something, but it says three felons. It doesn't say sex offense or murder or what have you. I agree. Okay. But I think whenever it looks at the depravity part, you look at whether the father attempted rehabilitation or attempted to try to change his conduct, or some may actually even say the offender attempted to even become rehabilitated in these regards. It would appear by taking these classes or programs whenever they're available, at least so that he did provide some type of effort in that case. Are there any defenses in the statute that you're aware of to the depravity section of three felonies? They have to occur within a certain period of time. Other than that? If you're a model parolee or anything? But it just shifts the burden. I mean, the three felonies are in the record. It shifts the burden of the father to show that he was not depraved by those felony convictions. That's correct. It's not an automatic. That's correct. I mean, the finding of depravity may be automatic, but the basis upon which a termination would be supported by depravity can be shifted. That's correct. I would submit to this court that looking at the cases, it appears to me no violation of OP orders of protection that is found to be the presumption of depravity. So this could be the first case, or this could not be the first case where OP violations are depraved. Yes. But to overcome the rebuttable presumption, don't you have to show something other than it was a minor felony? Well, I believe you do under the case law, Your Honor, and that's what apparently the father attempted to do in his testimony. He testified about taking the courses and learning the differences between this and that. I mean, the statute doesn't differentiate between a Class X felony or a Class IV felony. No, it doesn't. It's just felon. We're stuck with that situation of felonies like this. So whether he rebutted that presumption or not, that's in the record, and it's for this court to make that determination. Did he successfully complete all of the requirements after the OPs were entered? Was there some classes he was supposed to go to? As far as the felonies? The OPs, no, the OPs, right. Nothing I'm aware of. It's not in the court orders there that he's to do this or that. So we would admit that under the facts and circumstances, not only committing the felonies but becoming rehabilitated, his interaction with the child, the findings would be that he's not to be depraved in this manner. The next issue is the reasonable progress for the return of the child during any nine-month period after the initial nine-month period. What I'd like to address there is that period would have began after the justification of the wardship. That would have been in May, and that would have been, by the way, in May of 2006. And if you read this statute about the nine-month period after the nine-month period, the statute clearly provides that the petitioner, which in this instance is the state, shall file with the court a pleading specifying the nine-month period no later than three weeks before the date set for discovery and closure. Nowhere in the record is there any notice by the state of what nine-month period the state seeks on this ground about making a reasonable progress for the return of the child. The state didn't provide it. The GAL didn't object to it. The court didn't object to it. The father didn't object to it. So I guess the argument is if nobody objected to it, then it's okay. Well, we disagree with that. And it's just like the Honorable Justice asked me, don't we have to follow the statute? If it says felony, it says felony. So yes, we have to follow the statute. The state's required to provide notice of this nine-month period which they intend to show no reasonable progress was made. This puts the father on notice. In fact, this came on board in the statutory language in January of 2006. I don't think there's any case rendering any decision of whether it's mandatory or not. But it does say shall. The basic word shall is a command. It doesn't say will or may or must. It does say shall. So our position is not the function of the trial court here as in this case to determine the nine-month period. It's the trial judge to say, well, I pick this nine-month period. If I pick this nine-month period, I pick any nine-month period I want to pick. And that's in the record. And that's not right. The right thing would have been to do is for somebody to object or somebody to at least comply with the statute here to give a specification of a nine-month period in which they're trying to allege no reasonable progress was made to put the father on notice and visibility to defend whatever that period is. It's just not in here in some kind of crapshoot. You've got to listen to all this stuff and try to figure out which nine-month period is which nine-month period. You need to know these things going into trial. But didn't you forfeit that at trial, though, because it was never raised? I agree with that. That was never raised. And it should have been, Your Honor. Brandon A. says that you forfeited it. You didn't raise it at the trial. It does say that, but there's some other cases that particularly address people versus hostellers. I don't know what more fundamental thing there is. All you've got to do is read the statute, and then at two lines below it says the state shall, within three weeks before, discovery cutoff, provide. It would have been easy to do for the trial court to order the state to say which nine-month period if they'd have been asked. Correct. They were never asked. And then the trial court said any nine-month period, just pick it. It doesn't matter if it was this one, this one, this one, or this one. That's what the trial court said. We feel that's wrong because it's up to the state to pick the nine-month period. It's their duty to put in the pleadings, or at least the discovery matter of the thing, about what nine-month period we're looking at. That gives the respondent or the father or the mother the opportunity to defend, to focus on that period of time. And that was not allowed here. I just think that's regardless. It should be followed in these cases, and it wasn't. It's unfair to penalize the father, but I understand what you're saying about the waiver, but it does seem to be a plain error. In addressing this issue of the father failing to make reasonable efforts to correct the conditions that were the basis for the removal, you look at the reasonable efforts here basically as the subjective standard. It focuses on the actual efforts of the parent and whether it's reasonable for that particular person. September of 2006, the father was recommended substance abuse evaluation, parenting, establishing income and housing, anger management evaluation. He conformed to them. There's evidence in the record where he went to Franklin-Williamson to get those evaluations. It wasn't available for him there because of the Hopian effect. He wasn't allowed to be there. Apparently, the mother of the child was on-premises being treated there. He sought services basically here in Mount Vernon, Illinois. The father completed his anger management classes, completed his parenting classes, and completed apparently the substance abuse assessment. To understand his reasonable efforts to correct the conditions that were the basis for the removal, that's to be within the nine-month period following the adjudication. We feel that in the record, it's a fact of the matter that those things were actually completed. In fact, if we look at the overall existence of this case, after that date even, he was provided things such as in February of 2008, anger management assessment, domestic violence assessment, substance abuse assessment. The caseworker said, well, he needs to do all these things. We know he can't sleep while he's incarcerated. He can do it whenever he gets out. Well, the record shows he actually did all those things while he was incarcerated. That just shows an extra effort or extra mile here to make a reasonable progress here. The reasonable efforts here to correct these conditions was by his participation in these services. He goes down to get them and can't get them there, so he finds another place to get them and follows through on that. As far as the best interest of the child in terminating these criminal rights, it appears the state did not prove by a preponderance of evidence that termination was in the best child's interest, and here's the reason why. The foster mom was a single mom. She was never married. She lived with her boyfriend. Her boyfriend never committed to the adoption because the child was not free for adoption. We're talking a four-year period here. Boyfriend's not committed to marriage. Boyfriend was apparently scared to be a parent. People live in a trailer next door to their family and staff. Commitment here. This seems to be a strange thing, but commitment for the best interest is what best interest is all about. In this situation, with a single mom, I will admit that she's very well educated. She deals with children on a regular basis through her employment. To think that the best interest of this child would be to terminate the father's right whenever the father is present, it just seems a bit obscure. Evidence in favor of the father, the director officer came to the best interest hearing, testified about the visitation to the jail, how well they went with the child. The child enjoyed the father. The father's sister testified that he babysat for her children. He was able to pick and provide. She has seen positive changes in maturity in him over this four-year period. The father testified that after getting out of incarceration in a three-bedroom home in Christopher, Illinois, with a garage in the basement, a bedroom for the child. He was employed. He was able to pick and provide for the child. He helped raise his nephews, nieces. He loves his daughter, and his daughter shows love toward him. Harold was haven at the time of the termination. At the time of termination, I believe she was three-and-a-half going on four, Your Honor. And at the time of the best interest. Best interest? She was months old. She was very young. I believe she was born in June or May. The best interest will be at the end. She was approximately three-and-a-half going on a four-year stage at that point. She was very young. She was taken out of the house. The point I'd like to make as far as the best interest hearing is the guardian male life of the minor child could not make the recommendation to terminate parental rights after that best interest was presented. The guardian male life pointed out about the concern over the stability in the foster home, lack of a father figure, lack of commitment by the boyfriend not only to adopt, not only to be a parent, not only to support marriage, and lack of the commitment between the foster mom and the dad. And we would feel that the best interest of the child would be to have a father. This child would never have a mother again. That mother died. So now we have no father. We feel that it would be in the best interest of this child to have a father figure, and the best interest is not to terminate those rights. The last remaining issue, I have some reservations on this, is ineffective assistance of counsel. I know that we make legal decisions every day for our clients. We make decisions for us. We try to make decisions for the case. I'm not trying to be a backseat driver. I'm not trying to be an armchair quarterback. You're finished. I'm done. Thank you. All right. You'll have an opportunity for rebuttal. Thank you, Mr. Hanahan. Thank you. May it please the court, counsel, my name is Sharon Chanhan, and I represent the people of the state of Illinois. As you know, he was found unfit on three different grounds. I, like the trial court, will start with what the trial court called the Eastwood Defect. As counsel noted, depravity was defined by our Supreme Court in 1952 as an inherent deficiency of moral sense and rectitude. We still use that definition today, but in the last 50-some-odd years, our ideas of how that is applied have changed so much. In Statler, the court found a woman who had had affairs with married men and bore a child out of wedlock to be depraved. Certainly, there'd be a lot of people losing kids today if that was still considered depravity. Our society, whether we like it or not, our society has become more liberal on its concepts of cohabitation, but it has become more concerned with those who repeatedly flaunt criminal laws. And that is why, in 1998, the Adoption Act was amended by our legislature to present a rebuttable presumption that a parent is depraved if that parent has been criminally convicted of at least three felonies, and at least one of these convictions took place within five years of the filing of the petition to terminate. Here we have a fairly young man convicted of five felonies in four years. I note in my brief the case of Inouye, B.C., that says that a number of convictions can establish depravity since they establish a pattern of criminal activity. They also show a continual inability or unwillingness to conform to accepted morality. That's what Statler says. That's what happened here. Now, as Justice Sponger noted, the statute does not say three or more bad felonies. The statute does not say three or more violent felonies. The statute does not say sex offenses or murders, which are the ones that are quoted by defense counsel here today. It simply says felonies. Now, basically, the argument set forth by the defendant is that, well, this wasn't a really bad guy. They were only orders of protection. They were felony orders of protection. You don't get a felony order of protection simply because, for the very first time in your life, you yelled at your girlfriend and tossed her out the steps. Felony orders of protection are either because of a previous domestic violence, domestic battery, or the violation of another order of protection. What class felonies are those? Do you know off the top of your head? Three or four? I mean, our legislature, though, on the flip side of this, has established that quantified this and class X's and class 1's and 2's are more serious. But I think what they are looking for here is this idea of people who consistently flaunt the law. Who consistently, I mean, here's the, I'm getting off track here a little bit, but there's another section of the statute that has kind of a similar idea of, I'm paraphrasing here, but that says that a person can be found unfit if they're in prison at the time the unfitness petition is filed. If they've been there for a while, they're going to be there for a while. Being in prison takes you away from your children. Repeated felonies takes you away from your children. And it doesn't matter whether, I mean, in the four years her father's been in prison, more than half of it. You can't be there to be a father for her. So there's another reason why this particular statute does not necessarily have to say only bad felonies. We're trying to get parents to show respect for the law, trying to get parents that will be there for their children. And Henry R.K. also cited in my brief case, the court there, that was basically prostitution was the crime there. But the court's language says, numerous felony convictions and orders of protection demonstrate by clear and convincing evidence that the respondent is unable to cope with the norms of society in a lawful manner and that he is either unwilling or unable to conform to accepted morality. That's what we've got right here. I think it's also important first of all, I've got to back up one point. This isn't just orders of protection. There is a conviction for criminal trespass and there is a conviction for aggravated battery. And then others are felony orders of protection. Now, of these five felonies, how many arose based on separate incidents? Did all five of them, all five of them were completely separate incidents? It wasn't like we see so many often times where a person gets convicted of three or four felonies in the same crime spree. How many of these were separate instances? It is my recollection that they were all separate instances. In fact, they were all separate girlfriends. The criminal trespass was girlfriend number one and the if I'm getting this right, aggravated battery. The record will show that. Aggravated battery is I believe the mother of this child. But you're saying there were five separate distinct instances? Yes, sir. I think it's really important in here too to look a little bit beyond the stricture since we have clear to me there's no doubt whatsoever that we've met the burden to prove the felonies and we now have to see whether the defendant has rebutted that presumption. I think it's very important here to consider as the trial court did all of the defendant's misdemeanor convictions that happened after this child was taken from home. We have the initial misdemeanor conviction for battery of the child's mother. We have criminal damage to the child's Natalie was his little girl's mother's name. Criminal damage to Natalie's home. He kicked in the door of Natalie's home and criminal trespass to state-supported land. Now, you have to kind of make a few insinuations there but it says in the record that he was charged with that in September of 2007 I believe and in September of that same year there is no question that Natalie was living in government housing so it doesn't take a stretch to see that he was once again at Natalie's door and then although we don't know what they're for the trial court said he took judicial notice of more than three other orders of protection. They did not result in convictions but criminal conviction is not necessary for a finding of unfitness. So basically we have a man here who just thinks that it's okay to threaten and beat up his girlfriend and he did it before this happened and he did it to this little girl's mother and he did it to the girlfriend that came after this little girl's mother. He has flaunted his disrespect for the law. I also disagree with defendants argument about what the orders of protection were for the felony orders of protection. Counsel said that one was that he was at his sister's house where a protected person was and that one was in the county jail. My reading of the record reflects that on the first one he says I agree he does say that he didn't know the protected person was there. The record says that but as counsel also agrees he pled guilty to it so he admitted he did it when he pled guilty to it. Second of all defendant claims that the January 2007 violation was for being within 500 feet of Natalie while he was at his sister's house but the caseworker testified that that order of protection was violated because the respondent left threatening text messages on Natalie's phone and then after he did that he called her and pretended that he was a Lutheran social services worker and said we're going to take the children away from you you'll never see them again stuff like that. That had nothing to do with the sister's house and then as far as the county jail I didn't find that either. What I believe the record indicates is that in fact at the unfitness hearing the defendant admitted that the order of protection during that period of time was requested by his current girlfriend I don't know how to pronounce Mary's last name for repeatedly harassing him at her workplace and he was then arrested for violating that order of protection and he also admitted that there were allegations of domestic violence between him and Mary so that doesn't sound like rehabilitation to me. He continues after this and I'm using the word rehabilitation in saying that he has not rebutted the presumption of depravity. There's a lot of talk about the classes that he took that to me does not help the defendant in either this depravity portion or in the later portions because first of all he was asked to take classes when this very first started. He did nothing for several months. He finally made an appointment for an alcohol evaluation. He didn't show up. He made another appointment for an alcohol evaluation. He didn't show up. Four months later he comes back again. That is when he finds out that he can't take them in Williamson County because apparently Natalie's housed there. So he did come up here but he didn't finish the classes. He's never finished alcohol abuse classes. He took five to ten hours of a required 75 hours. He says, I completed anger management classes in August. He doesn't say, and then I was arrested for beating up my girlfriend in September. The classes are supposed to accomplish something. Obviously just sitting in a class doesn't accomplish something. You're supposed to learn something from it. He was ordered to take more anger management classes. He did not finish the second round of anger management classes. Towards the end of time after the petition was filed to terminate, he suddenly gets arrested for taking classes. His own expert, well I guess he was an expert, his own witness, Doris Weaver, who taught the classes at Graham, she said that the defendant was taking the classes now because that would help the case and not because he recognized his problems. Let's fast forward a bit here if we can on the reasonable progress and reasonable efforts. You've acknowledged that the state failed to acknowledge which nine-month period. How is it not ineffective to assist as a counselor to go to trial not knowing which nine-month period you're talking about? If he had done it, first of all, if he had done it, the judge would have said it's this nine-month period. If he had done what? If he had said I need to know. I need to know. All he had to do was say I need to know. And the judge would have said state, you need to tell him. And the state would have told him he could have requested a continuance, everything would have been fine. He did not. And the important thing is not once but twice, this trial court says it doesn't matter what nine-month period and I will emphasize the record strongly supports that it doesn't matter what nine-month period. Essentially, the whole period that could be considered would be that you could pick a nine-month period out of would be from February 28, 2007 to January 11, 2008. At the end of the state's case in chief, the trial court says that I'm quoting him here too, you can pick the first nine months, you can pick the last nine months, you can pick any nine months and I will make a finding at this point that the state has presented enough evidence to show that the respondent has not made reasonable progress towards the return of the child. Then we have benefits on his evidence. And at that point, the judge says I can pick this period, I can pick this period, then he says, again I'm quoting, they are the same and you can pick any other nine-month period you want and still find the respondent made no reasonable progress let alone, I mean no progress, let alone reasonable progress towards the return of the child. And so if the trial court had objected, it would have simply been a continuance if he wanted it. But the same evidence would have been presented. You can't make up the evidence. The service plans are in there, the reports are in there. Ultimate outcome would not have been affected. And the other thing I want to note is that the nine-month period would affect only only this ground, this one, one of the three grounds. This finding of unfitness and termination can be supported by any of the grounds. So if the, if this court were to uphold depravity, if this court were to uphold failure to correct conditions, then it doesn't matter. Again, no harm. We have to have prejudice to the defendant to find an effective assistance of counsel. Since the record indicates that it and supports the trial court's statements that it doesn't matter which nine months, there is no nine-month period that he couldn't find this. And since the finding can be upheld on either of the other grounds which do not specify a specific nine-month period. Well, the problem with that argument, though, is that is that how do you know what evidence the defendant or the father would have presented to counter these allegations of of making no progress with the nine-month period? Well, again, I'll go back to number one. As far as let's just assume solely for the sake of answering your question that this court were to decide that it was ineffective assistance of counsel to not find out what nine-month period it was. If you say yes, but there's still grounds of You would agree with that, would you not? If you're representing the father, you would want to know what nine-month period it was, right? The nine, I mean, as I said, we're not talking about I've seen, I've handled these cases that have gone on for years and years and years and years and years. The entire time frame that could be considered here is not a lot to know for a year. So we're not talking about a huge time frame. We do have complete documentation of the entire time frame. So the defendant did know all of the evidence against him that he could there simply wasn't much that the defendant could do to rebut this regardless of what time frame they did. I think basically this is kind of how the hearing went was that they just kind of the state presented the whole, what did I say it was, little over a year period of time. Are you saying there was error but there was no prejudicial error? Absolutely. Is that what the argument is? Yeah. And for ineffective assistance of counsel that is, I mean, if you find no prejudice to the defendant then it cannot have been ineffective assistance. And so I would just briefly want to touch on the best interest thing. I just think that if all children were allowed to grow up with a mother like this, or this child, defense counsel says this child doesn't have a mother. Yes she does. Ms. Wallace has had this child since she was four months old. She says she's just as much my child as my natural born child. Defendant's own expert again says that she doesn't emphasize a need for male role models. Instead she teaches about all kinds of families. And her program does not teach that it is important to have both a mother and a father. Instead it is more important to develop self-esteem. Ms. Wells is perfectly capable and willing and able, far more capable and willing and able than most of the foster parents we see here to raise this child. I think that's a reasonable thing to worry about. I don't want to get too attached to this child and then lose her. Thank you, counsel. Chair Biden, rebuttal. Thank you, Your Honors. I'd like to address the issue here about the nine month period and the reason why he was entitled to that notice. When you start a trial, are we ready for trial? The state says yes. The defendant says yes. The trial says call your first witness. This is not a discovery area. This is a statutory area. I cannot imagine based on my experience stopping to proceed with three parties involved, giving a continuance to figure out this nine month period and then coming back and doing it again. I just find that rather absurd. It would be like a discovery violation technically. You've got to stop that trial and come back and finish it up because that witness is not disclosed. Probably not. This is statutory. This is under the civil practice act. This is under the termination of the document. I think that's very important for the father and any other respondents. Thank you. Thank you, counsel. The clerk will take the matter under advisement and render its decision.